UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2010 SEP 14 A 11: 17
U.S. DISTRICT COURT
BRIDGEPORT, CONN

JASON AKANDE,
    Plaintiff,

v.                            CASE NO. 3:08cv188 (WWE)

LEONARD R. GRASER,
    Defendants.

## MEMORANDUM OF DECISION ON SUMMARY JUDGMENT

Plaintiff Jason Akande alleges that defendant Leornard Graser was deliberately indifferent to his medical needs in violation of 42 U.S.C. § 1983.

Pending is defendant Graser's motion for summary judgment. For the reasons that follow, the motion for summary judgment will be granted.

### I.   Standard of Review

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential

element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Liberty Lobby, 477 U.S. at 24. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him. See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party. See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

II.     **Facts**[1]

On October 22, 2009, a federal criminal jury found plaintiff guilty of conspiracy to make a false statement in a passport application in violation of 18 U.S.C. §§ 371 and 1542, making a false statement in a passport application in violation of 18 U.S.C. § 1542 and making a false statement to a government agency in violation of 18 U.S.C. § 1001. In January 2010, plaintiff was sentenced to forty-one months in prison followed

---

[1] The facts are taken from defendant's Local Rule 56(a)1 Statement along with the attached exhibits and affidavits and plaintiff's Local Rule 56(a)2 Statement and attached exhibits.

by a three-year term of supervised release. Plaintiff is currently confined at the South Bay House of Correction in Boston, Massachusetts.

In May 2007, plaintiff was confined at Corrigan-Radgowski Correctional Institution ("Corrigan") as a detainee awaiting trial on the federal criminal charges described above. Correctional Officer Leonard Graser was employed at Corrigan during plaintiff's confinement at that facility. Officer Graser did not have authority to render medical treatment to inmates confined at Corrigan or any other prison facility.

On May 17, 2007, at about 8:00 p.m., plaintiff was walking back from the showers when he slipped and fell on his back. Correctional Officer Graser observed plaintiff on the floor and asked whether he needed medical attention. Plaintiff indicated that he did not need medical treatment and would take pain medication that he already possessed.

At some point between 10:00 p.m. and 11:30 p.m., plaintiff asked Correctional Officer Graser to place a request for medical treatment in the box designated for medical department requests. Correctional Officer Graser placed the request in the box for the medical department. At 12:00 p.m., Officer Graser's shift in plaintiff's housing unit ended. Officer Graser did not see plaintiff after his shift ended.

On May 18, 2007, plaintiff walked to the medical department. At approximately 2:20 p.m., a nurse in the medical department examined plaintiff in response to his complaints of back, neck and jaw pain. The nurse prescribed Motrin for plaintiff's pain.

On May 19, 2007, Dr. Ganpat Chouhan examined plaintiff, ordered an x-ray of plaintiff's lumbar spine and prescribed Motrin for the pain. Dr. Chouhan directed plaintiff to return to the medical department for treatment as necessary. The x-ray of

3

plaintiff's back revealed evidence of a muscular spasm, but no evidence of fracture or dislocation. On May 30, 2007, Dr. Chouhan denied plaintiff's request for a bottom bunk pass as medically unnecessary.

On June 6, 2007, plaintiff complained of low back, neck and jaw pain. On July 4, 2007, Dr. Chouhan re-prescribed Motrin for three months to treat plaintiff's pain.

Plaintiff did not return to the medical department for further treatment of any injuries sustained during his fall, but did request a re-fill of the Motrin prescription in October 2007. On October 23, 2007, Dr. Chouhan re-prescribed Motrin for plaintiff's back pain for six months. On December 7, 2007, Corrigan prison officials transferred plaintiff to Hartford Correctional Center. On December 9, 2008, Connecticut prison officials transferred plaintiff to the Donald C. Wyatt Detention Facility in Central Falls, Rhode Island.

## III. Discussion

Defendant Graser moves for summary judgment on two grounds. He argues that he was not deliberately indifferent to a serious medical need of the plaintiff and that he is entitled to qualified immunity.

At the time of the events set forth in the complaint, the plaintiff was a federal pretrial detainee. Because "[a] person lawfully committed to pretrial detention has not been adjudged guilty of any crime," the Due Process Clause dictates that prisoners may not be punished in any cruel or unusual manner. *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979). Although the rights of sentenced inmates are governed by the Eighth Amendment's prohibition against cruel and unusual punishment, a person detained

4

prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the Fifth Amendment, if the pretrial detainee is held in federal custody, or the Due Process Clause of the Fourteenth Amendment, if held in state custody. *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000)(applying Fifth Amendment to a federal detainee).

Fifth Amendment Due Process claims of deliberate indifference to the serious medical needs of a pretrial detainee are analyzed under the Eighth Amendment standard applicable to convicted prisoners. *See Cuocco*, 222 F.3d at 106. The Supreme Court has held that, although the Eighth Amendment's protections of prisoners from cruel and unusual punishment due to the deliberate indifference to serious medical needs do not specifically apply to pretrial detainees, the protections afforded pretrial detainees under the Due Process Clause "are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 243-44 (1983). Pursuant to the Eighth Amendment standard, a plaintiff must show that a defendant denied him treatment necessary to remedy a serious medical condition and did so because of his deliberate indifference to that need. *Id.*

Objectively, plaintiff must show that he suffered from a serious medical condition. A serious medical need has been defined by the Second Circuit as an urgent medical condition that causes death, degeneration or extreme pain. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). The Second Circuit considers whether the medical condition affects an inmate's daily activities in a significant manner and whether a

reasonable physician would consider the condition or injury to be important and to require treatment. *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Subjectively, the plaintiff must show that the prison official knew of and disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, the plaintiff must demonstrate something more than mere negligence although proof of intent is not required; the deliberate-indifference standard is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. *Weyant,* 101 F.3d at 856. The plaintiff must show that the prison official was aware of facts from which he or she should have recognized the risk of substantial harm to the injured inmate. *Hathaway*, 37 F.3d at 66.

Defendant Graser argues that plaintiff's injury was not serious and that he has not met the objective component of the Eighth Amendment standard. Plaintiff contends that he suffered from a serious medical condition that required pain medication. However, the record fails to support plaintiff's contention.

Plaintiff concedes that after he fell, he informed defendant Graser that he did not need treatment and did not need to go to the medical department because he was not in serious pain and that he had his own pain medication that he could take for pain. Additionally, plaintiff was without medical treatment for at most two hours during Officer Graser's shift after plaintiff made a request for medical treatment at 10:00 p.m.

Plaintiff has not adduced evidence to show that he asked either defendant Graser or Correctional Officer Hanney for medical assistance when they made their tours of the unit at 10:30 p.m. or 11:00 p.m. Furthermore, plaintiff does not indicate that

6

he made any other efforts to secure medical treatment from other correctional staff after defendant Graser's shift ended at midnight and before 1:45 p.m. the following day when he walked unassisted to the medical department. Plaintiff does not dispute that he could have pressed the emergency buzzer in his cell to request medical treatment at any time. Moreover, plaintiff has submitted no evidence to contradict the fact that the medical department at Corrigan was staffed twenty-four hours a day, seven days per week at the time he suffered his injuries.

The evidence regarding plaintiff's medical condition reflects that his situation during the four hour time period after he fell and before Officer Graser's shift ended was not serious. *See Davis v. Reilly*, 324 F. Supp. 2d 361, 368 (E.D.N.Y. 2004) (A "sprained back and neck" due to fall outside shower area of prison "d[id] not constitute a serious medical condition."); *Veloz v. New York*, 339 F. Supp. 2d 505, 522-26 (S.D.N.Y. 2004) (plaintiff's chronic back pain and mild to moderate degenerative arthritis of spinal vertebrae did not establish a serious medical need). Furthermore, the allegedly more severe back pain suffered by plaintiff during the last two hours of Officer Graser's shift did not constitute a serious medical need because of its short duration. *See, e.g., Hathaway*, 37 F.3d at 67 (finding plaintiff with degenerative hip condition who experienced great pain over an extended period of time and had difficulty walking had "serious medical needs").

Plaintiff has not submitted evidence to show that he complained about pain in his back or sought medical treatment from any other prison officer or medical employee after Officer Graser's shift ended. Furthermore, plaintiff does not dispute that he was

able to walk unassisted to the medical department during the afternoon of May 18, 2007. Accordingly, plaintiff has not met the objective component of the applicable standard.

Even if plaintiff's back pain could be considered a serious medical need, plaintiff has not provided evidence to demonstrate that Officer Graser was deliberately indifferent to that need. The parties do not dispute that Officer Graser did not have the authority to render medical treatment to plaintiff on the day of the accident. Nor do the parties dispute that at some point between 10:00 p.m. and 11:30 p.m., Officer Graser placed plaintiff's medical treatment request in the box for the medical department as directed by plaintiff.

The alleged two-hour time period during which Officer Graser did not notify the medical department verbally regarding plaintiff's back pain does not constitute deliberate indifference to plaintiff's medical need. *Rodriguez v. Ames*, 224 F. Supp. 2d 555, 561 (W.D.N.Y. 2002) ("Although a delay in medical care can demonstrate deliberate indifference to a prisoner's medical needs, a prisoner's Eighth Amendment rights are violated only where the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment"). Because plaintiff has not raised an inference that Officer Graser was deliberately indifferent to a serious medical need, defendant's motion for summary judgment will be.

## IV. Conclusion

Defendant Graser's Motion for Summary Judgment [**Doc. No. 39**] is **GRANTED**. The Court declines to exercise supplemental jurisdiction over any state law claims against defendant Graser. See 28 U.S.C. § 1367(c)(3); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (where all federal claims have been dismissed, the court may decline to exercise supplemental jurisdiction over state law claims). The Clerk is directed to enter judgment in favor of the defense and to close this case.

Dated at Bridgeport, Connecticut this 14th day of September, 2010.

Warren W. Eginton
Senior United States District Judge